No. 26-2785

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

ADAM EHRLICH, GOOD BET TRADING LLC, AND A KENSINGTON JOINT LLC,

*Plaintiffs-Appellees*,

v.

THE PHILADELPHIA INQUIRER, LLC, SAMANTHA MELAMED, MAX MARIN, MICHELLE MYERS, ANTON KLUSENER, AND DYLAN PURCELL,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Docket Number 2:25-cv-04620
District Judge Mia R. Perez

# APPELLANTS' BRIEF REGARDING APPEALABILITY OF ORDER DENYING IMMUNITY UNDER THE PENNSYLVANIA UNIFORM PUBLIC EXPRESSION PROTECTION ACT

BALLARD SPAHR LLP

Michael Berry
Elizabeth Seidlin-Bernstein
Timothy Tai
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Counsel for Appellants The Philadelphia Inquirer LLC, Samantha Melamed, Max Marin, Michelle Myers, Anton Klusener, and Dylan Purcell*

## TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 3

I. EHRLICH, TRIPLE X, AND THE INQUIRER ARTICLE .......... 3

II. THE DISTRICT COURT PROCEEDINGS .......... 5

ARGUMENT .......... 7

I. AN OVERVIEW OF PA-UPEPA .......... 9

II. PA-UPEPA CONFERS IMMUNITY FROM SUIT .......... 13

A. The Statute's Text and Structure Demonstrate the Legislature Sought to Immunize Defendants from the Burdens of Meritless Lawsuits Arising from Speech on Matters of Public Concern .......... 14

B. PA-UPEPA's Purpose and Effect Show It Provides an Immunity from Suit .......... 18

III. BECAUSE PA-UPEPA CONFERS AN IMMUNITY FROM SUIT, ITS DENIAL IS IMMEDIATELY APPEALABLE .......... 22

IV. ALLOWING IMMEDIATE APPEALS OF PA-UPEPA'S IMMUNITY UPHOLDS FEDERALISM INTERESTS .......... 27

CONCLUSION .......... 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................11

*AtNight Media LLC v. Trude*,
2026 WL 2860890 (Pa. Super. Sept. 23, 2026)....................9, 18

*Behrens v. Pelletier*,
516 U.S. 299 (1996)....................26

*Bell Atlantic-Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*,
273 F.3d 337 (3d Cir. 2001)....................9, 14

*Blaylock v. City of Philadelphia*,
504 F.3d 405 (3d Cir. 2007)....................27

*Brown v. Grabowski*,
922 F.2d 1097 (3d Cir. 1990)....................8, 14, 21, 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................11

*In re City of Philadelphia Litigation*,
49 F.3d 945 (3d Cir. 1995)....................14, 28

*Cohen v. Beneficial Industrial Loan Corp.*,
337 U.S. 541 (1949)....................7

*Counterman v. Colorado*,
600 U.S. 66 (2023)....................19

*Estate of Arrington v. Michael*,
738 F.3d 599 (3d Cir. 2013)....................23

*Federal Insurance Co. v. Richard I. Rubin & Co.*,
12 F.3d 1270 (3d Cir. 1993)....................23

*Ferri v. Ackerman*,
444 U.S. 193 (1979)....................................................................................28

*Franchini v. Inv.'s Bus. Daily, Inc.*,
981 F.3d 1, 7 (1st Cir. 2020)......................................................................21

*Geo Group, Inc. v. Menocal*,
607 U.S. 438 (2026)......................................................................8, 22, 24

*Gilbert v. Synagro Central, LLC*,
131 A.3d 1 (Pa. 2015)..................................................................................11

*Gopher Media LLC v. Melone*,
154 F.4th 696 (9th Cir. 2025) .....................................................................22

*Hanna v. Plumer*,
380 U.S. 460 (1965)....................................................................................29

*Heller v. Fulare*,
454 F.3d 174 (3d Cir. 2006) ....................................................................8, 21

*Hernandez v. Zook*,
2026 WL 2717231 (Pa. Sept. 15, 2026) .......................................................12

*HIRA Educational Services North America v. Augustine*,
991 F.3d 180 (3d Cir. 2021) .......................................................................15

*Kevin C. v. Foundations Behavioral Health*,
2023 WL 3244575 (3d Cir. May 4, 2023).....................................................14

*Lento Law Group PC v. Estrada*,
2026 WL 2100471 (E.D. Pa. July 21, 2026) .................................................13

*Lozano v. New Jersey*,
9 F.4th 239 (3d Cir. 2021) ............................................................................8

*McCarthy v. U.S. Drug Enforcement Administration*,
171 F.4th 245 (3d Cir. 2026) ........................................................................6

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) .....................................................................19

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)........................................................................*passim*

*In re Mushroom Direct Purchaser Antitrust Litigation*,
655 F.3d 158 (3d Cir. 2011) ........................................................................23

*N.N. v. School District of Philadelphia*,
349 A.3d 1081 (Pa. Commw. 2025) ...................................................................18

*National Review, Inc. v. Mann*,
589 U.S. 1088 (2019).....................................................................................19

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
745 F.3d 742 (5th Cir. 2014) .........................................................................14

*Odd v. Malone*,
538 F.3d 202 (3d Cir. 2008) ..........................................................................23

*Oss Nokalva, Inc. v. European Space Agency*,
617 F.3d 756 (3d Cir. 2010) ....................................................................17, 23

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993).................................................................................8, 23

*Pearson v. Callahan*,
555 U.S. 223 (2009)......................................................................................25

*Plumhoff v. Rickard*,
572 U.S. 765 (2014)........................................................................25, 26, 27

*Ragan v. Merchants Transfer & Warehouse Co.*,
337 U.S. 530 (1949)......................................................................................28

*Salaam v. Trump*,
2025 WL 2375397 (E.D. Pa. Aug. 15, 2025) ...................................................13

*Schuster v. U.S. News & World Report, Inc.*,
602 F.2d 850 (8th Cir. 1979) ..........................................................................19

*Schwern v. Plunkett*,
845 F.3d 1241 (9th Cir. 2017) ........................................................................21

*Siegert v. Gilley*,
500 U.S. 226 (1991) .......... 25

*Steaks Unlimited, Inc. v. Deaner*,
623 F.2d 264 (3d Cir. 1980) .......... 19

*In re Trustees of Conneaut Lake Park, Inc.*,
855 F.3d 519 (3d Cir. 2017) .......... 17

*Will v. Hallock*,
546 U.S. 345 (2006) .......... 23

**Constitutional Provisions and Statutes**

U.S. Const. amend. I .......... *passim*

Pa. Const. art. V, § 10(c) .......... 12

28 U.S.C. § 1291 .......... 7

42 U.S.C. § 1983 .......... 23

1 Pa.C.S. § 1921 .......... 17, 18

42 Pa.C.S. § 702 .......... 15

42 Pa.C.S. § 8340.12 .......... *passim*

42 Pa.C.S. § 8340.13 .......... 10, 28

42 Pa.C.S. § 8340.14 .......... 19

42 Pa.C.S. § 8340.15 .......... *passim*

42 Pa.C.S. § 8340.16 .......... 12, 15, 16, 21

42 Pa.C.S. § 8340.17 .......... 11, 20, 28

42 Pa.C.S. § 8340.18 .......... 11, 15, 17, 23

## Legislative Materials

56 Pa. Bull. 997, 2026 PA REG TEXT 712935 (NS) (Feb. 21, 2026)....................12

PA LEGIS 2024-72 § 2, 2024 Pa. Legis. Serv. Act 2024-72 § 7(2) (H.B. 1466) ....................................................................................................12

Remarks on H.B. 1466, Pa. S. Legis. J., 2024 Sess., 647 (July 9, 2024) ................20

## Other Authorities

Federal Rule of Civil Procedure 12(b)(6) .......................................................1, 6, 11

Michael Berry & Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections: The New Uniform Public Expression Protection Act*, 96 PA. BAR ASS'N Q. 1 (Jan. 2025)..........................................................................................10

Defendants-Appellants The Philadelphia Inquirer LLC, Samantha Melamed, Max Marin, Michelle Myers, Anton Klusener, and Dylan Purcell (collectively, the "Inquirer") respectfully submit this brief in response to the Court's September 9, 2026 Order (Dkt. 13) directing the parties to address whether the district court order at issue is appealable at this time.

## INTRODUCTION

This lawsuit arises from an investigative report published in *The Philadelphia Inquirer* about the role of real estate speculators – including Plaintiff-Appellee Adam Ehrlich – in contributing to the drug crisis and blight in the Kensington neighborhood of Philadelphia (the "Article"). The Article reported that Ehrlich's failure to secure a vacant property he owned through one of his companies resulted in it being overrun by drug activity until its court-ordered demolition. Ehrlich and two of his companies filed suit against the *Inquirer*'s owner and several of its journalists, alleging they were defamed by dozens of statements and implications in the Article.

The Inquirer moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). In that motion, the Inquirer invoked the immunity provided to defendants facing claims "based on protected public expression" under Pennsylvania's Uniform Public Expression Protection Act ("PA-UPEPA"), 42 Pa.C.S. § 8340.11 *et seq.* The district court granted the Inquirer's motion to

dismiss "in substantial part" but denied it "in limited part," allowing four theories of liability to proceed. Mem. Op. at 1-2, 26, ECF No. 37.[1] As a result, while recognizing that "the Article qualifies at the threshold as protected public expression" under PA-UPEPA, the Court denied the Inquirer its "complete entitlement to immunity" and directed that the case proceed to discovery. *Id.* at 25. The Inquirer timely filed this appeal challenging the denial of immunity.

The district court's order is appealable under the collateral order doctrine. Longstanding precedent governing this doctrine provides that immunities from suit, including immunities established under state law, are immediately appealable. PA-UPEPA confers an immunity from suit. That immunity, like other immunities from suit, satisfies all elements of the collateral order doctrine: The immunity provided by PA-UPEPA would be lost if the Inquirer were forced to proceed further in litigation; the district court's denial of the immunity conclusively determined that issue; and the determination of the Inquirer's immunity is distinct from the merits of Ehrlich's claim. In addition, permitting denials of PA-UPEPA's immunity to be immediately appealed accords due respect to the General Assembly's efforts to protect Pennsylvanians' freedom of speech on matters of

[1] All citations to "ECF No. __" refer to the district court docket in this case.

public concern and prevents forum-shopping by plaintiffs who seek to stifle critical speech on such matters through meritless lawsuits.

## BACKGROUND

### I. EHRLICH, TRIPLE X, AND THE INQUIRER ARTICLE

As explained in the complaint, Ehrlich is "in the business of buying and selling financially distressed properties and vacant land within the City of Philadelphia." Compl. ¶ 16, ECF No. 1. Through various companies, Ehrlich owns more than 100 properties in the Kensington neighborhood. *Id.* ¶¶ 1, 26. He does not develop the properties; instead, he simply holds them in the hope they will appreciate in value. *Id.* ¶ 16.

In 2020, one of Ehrlich's companies, A Kensington Joint LLC, purchased a property known by neighbors as "Triple X" for the adult bookstore that once operated there. *Id.* ¶ 28. Ehrlich began allowing unhoused individuals to live in the vacant Triple X building. Article at 15, 23-24, ECF No. 1-1. Soon, drug dealers set up tables in the empty lot to sell illegal narcotics, as well as tents for customers to rent while they got high. Compl. ¶ 38; Article at 4. In the summer of 2022, after an alleged shooting in the area, the suspect fled into Triple X for refuge. Compl. ¶¶ 46-52. Following that incident, the City's Department of Licenses and Inspections ("L&I") sealed the building and issued numerous code violations. Article at 32.

The City subsequently filed an emergency petition in the Philadelphia Court of Common Pleas against Ehrlich and A Kensington Joint, seeking to demolish Triple X. Compl. ¶ 53 & n.8; Article at 31; *City of Philadelphia v. A Kensington Joint LLC*, July Term, 2023, No. 2222 (Philadelphia Cnty. C.C.P.). On September 5, 2023, the Philadelphia court granted the City's request, making detailed findings of fact and conclusions of law against Ehrlich and his company. *See* Mot. to Dismiss Ex. B (the "Demolition Order"), ECF No. 22-4. For example, the court ruled that Triple X was a site of "open illegal narcotics usage and sales" under Ehrlich's ownership, *id.* at 45, to which he turned "a completely blind eye," *id.* at 73; that a police SWAT team was called to Triple X "due to a shooting that had occurred where an individual had run into the Property," *id.* at 27; and that Ehrlich had "a persistent and patterned business practice of buying and holding dilapidated properties, failing to make repairs, allowing them to become unsafe or imminently dangerous properties, and attempting to minimize and not pay the normal carrying costs associated with ownership of those properties," *id.* at 74.[2]

Nearly a year after the court-ordered demolition of Triple X, the Inquirer published the Article, which investigated the role of real estate speculators in

[2] On July 28, 2026, the Court of Common Pleas ordered Ehrlich and A Kensington Joint to pay the City a fine and costs totaling $295,376.04. An appeal of that order is now pending. *See City of Philadelphia v. A Kensington Joint, LLC*, No. 1301 CD 2026 (Pa. Commw.).

fueling crime and drug problems in Kensington. Compl. ¶ 29; Article at 3. The Article identified Ehrlich as one of many "bulk buyers" of properties in Kensington, some of which, "such as Triple X, have outsized impact on their surrounding communities, attracting crime, drug sales, and gun violence." Article at 7. The Article described events involving Triple X and the history of code violations at Ehrlich-controlled properties as examples of the issues in Kensington that are exacerbated by real estate speculators. In its reporting on Triple X and other Ehrlich-owned properties, the Article relied on neighbors, civic groups, city officials, public records, and Ehrlich himself, who was quoted extensively. *See generally id.*

## II. <u>THE DISTRICT COURT PROCEEDINGS</u>

Ehrlich and two of his companies, A Kensington Joint and Good Bet Trading, LLC, filed this lawsuit in August 2025. The lawsuit asserted a defamation claim against the Inquirer, alleging that Plaintiffs were defamed by more than two dozen statements in the Article and numerous implications. Compl. Count I. It also asserted two civil rights claims against the City of Philadelphia and one of its employees based on the dissemination of the Article in connection with legal proceedings. *Id.* Counts II-III. Neither the City nor its employee are parties to this appeal.

The Inquirer moved to dismiss the defamation claim under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 22. It argued that Plaintiffs were collaterally estopped from re-litigating the findings of fact and conclusions of law already reached by the Philadelphia Court of Common Pleas in the Demolition Order; that the Demolition Order, public records, and Plaintiffs' own admissions in the complaint confirmed the truth of the Inquirer's reporting; that many of the challenged statements were constitutionally protected opinion; and that many of the defamatory implications Plaintiffs sought to draw from the Article were unreasonable. Mem. in Support of Mot. to Dismiss, ECF No. 22-1. The Inquirer also invoked its immunity from suit under PA-UPEPA. *Id.* at 27-29.[3]

On June 17, 2026, the district court granted the Inquirer's motion to dismiss in part and denied it in part. Order, ECF No. 38. In its opinion, the district court recognized that the "breathing room" provided by the First Amendment is "essential" to protect reporting on "matters of public concern, such as a neighborhood drug crisis and the community's response to it," and that the Article

---

[3] Plaintiffs filed an opposition to the Inquirer's motion to dismiss. ECF No. 32. After this Court reprimanded their counsel for his misuse of generative artificial intelligence in a different case, *see McCarthy v. U.S. Drug Enf't Admin.*, 171 F.4th 245, 247 (3d Cir. 2026), Plaintiffs withdrew their opposition brief because it contained many "citation and quotation issues," ECF No. 36 at 1; *see also* ECF Nos. 34-35. In ruling on the motion to dismiss, the district court declined to "parse the withdrawn [opposition] brief for usable factual assertions, quotations, concessions, or legal characterizations." Mem. Op. at 2 n.1.

was "a work of investigative journalism on matters of obvious public importance." Mem. Op. at 1. It proceeded to grant the Inquirer's motion to dismiss "in substantial part," but denied it "in limited part," allowing four theories of liability to stand. *Id.* at 1-2, 26; *see also* Order, ECF No. 38.

With respect to the immunity provided under PA-UPEPA, the district court held that the "Article qualifies at the threshold as protected public expression. It is journalistic reporting on matters of public concern." Mem. Op. at 25. Because the defamation claim "surviv[ed] in limited part," however, the court found that the Inquirer had "not established complete entitlement to immunity." *Id.* at 25. This appeal followed.

**ARGUMENT**

Federal courts of appeal have "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. Recognizing that some orders do not terminate district court proceedings yet determine rights "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," the Supreme Court has long given Section 1291 a "practical rather than a technical construction." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Under the collateral order doctrine, an order is considered "final" – and so may be immediately appealed – when it (1) is "effectively unreviewable on appeal from a

final judgment," (2) "resolve[s] an important issue completely separate from the merits of the action," and (3) "conclusively determine[s] the disputed question." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

"When, as here, an order denies a pretrial request to dismiss, appealability under *Cohen* will generally turn on whether the defendant has asserted a defense to liability or instead an immunity from suit." *Geo Grp., Inc. v. Menocal*, 607 U.S. 438, 444 (2026). If the defendant has asserted an immunity, "*Cohen* will likely allow" an immediate appeal. *Id.* Accordingly, this Court consistently has recognized that state-law immunities from suit apply to state-law tort claims brought in federal court and that rulings denying such immunities are immediately appealable under the collateral order doctrine. *See, e.g.*, *Heller v. Fulare*, 454 F.3d 174, 177 (3d Cir. 2006) ("[W]e have found jurisdiction where a motion to dismiss is based on denial of immunity under state law."); *Lozano v. New Jersey*, 9 F.4th 239, 244 (3d Cir. 2021) (holding that denial of qualified immunity under New Jersey Civil Rights Act is immediately appealable).

Whether a state statute grants an immunity from suit for purposes of the collateral order doctrine is a question of federal law. *Brown v. Grabowski*, 922 F.2d 1097, 1107 (3d Cir. 1990). To answer that question, the Court must examine both the statutory scheme and its legislative history to "draw inferences from the policies that they express." *Id.* "An immunity from suit generally is grounded in

the need to free parties from the costs, burdens, and consequences of having to be party to an action and to defend one's self." *Bell Atl.-Pa., Inc. v. Pa. Pub. Util. Comm'n*, 273 F.3d 337, 345 (3d Cir. 2001).

PA-UPEPA addresses such a need. The Act's structure and purpose demonstrate that the Pennsylvania General Assembly intended to grant defendants in cases arising from protected public expression an immunity not just from ultimate liability but also from the burdens of defending against such suits. Because the district court denied the Inquirer PA-UPEPA's immunity from suit, this Court has jurisdiction to immediately review that order under the collateral order doctrine.

## I. AN OVERVIEW OF PA-UPEPA

Pennsylvania is one of the most recent states to enact legislation designed to combat strategic lawsuits against public participation, commonly referred to as "SLAPP" suits.[4] *See AtNight Media LLC v. Trude*, 2026 WL 2860890, at *1 n.3 (Pa. Super. Sept. 23, 2026) (PA-UPEPA "is a statutory scheme protecting against strategic lawsuits against public participation"). The General Assembly unanimously passed PA-UPEPA because it found "there has been a disturbing increase in lawsuits brought primarily to chill" expression protected by the First

---

[4] *See Anti-SLAPP Legal Guide*, REPS. COMM. FOR FREEDOM OF THE PRESS, https://bit.ly/4afFu7b.

Amendment, and it recognized that "it is in the public interest to encourage continued participation in matters of public significance." 42 Pa.C.S. § 8340.12(1), (2). The General Assembly declared that "[t]his participation should not be chilled through abuse of the judicial process." *Id.* § 8340.12(2).

To combat such lawsuits and protect Pennsylvanians who speak out on public issues, the Act "grants immunity to those groups or parties exercising the rights to protected public expression." *Id.* § 8340.12(3)(i). PA-UPEPA broadly defines "protected public expression" to include any communication made in a government proceeding; any communication about an issue being considered by the government; and any exercise of the state and federal constitutional rights to free speech, press, assembly, and petition "on a matter of public concern." *Id.* § 8340.13.

While similar to other anti-SLAPP laws in certain respects, PA-UPEPA has a unique text and structure.[5] It employs five mechanisms to insulate defendants from the speech-chilling burdens of retaliatory suits:

*First*, the Act provides that a "person is immune from civil liability for a cause of action based on protected public expression" if any of three circumstances

[5] *See* Michael Berry & Kaitlin M. Gurney, *Pennsylvania Joins States Enacting Tough Anti-SLAPP Protections: The New Uniform Public Expression Protection Act*, 96 PA. BAR ASS'N Q. 1, 9-28 (Jan. 2025) (providing detailed overview of PA-UPEPA), *available at* https://bit.ly/3DPf7Jo.

applies: (1) the plaintiff fails to "establish a prima facie case as to each essential element of the cause of action," (2) the plaintiff fails to "state a cause of action upon which relief can be granted," or (3) "[t]here is no genuine issue as to any material fact, and the [defendant] is entitled to judgment as a matter of law." *Id.* § 8340.15.[6]

*Second*, if a defendant's assertion of immunity is denied in state court, the Act authorizes the defendant to file an immediate interlocutory appeal of that denial as a matter of right. *Id.* § 8340.17 (permitting immediate appeal of any "order granting, denying or otherwise determining immunity").

*Third*, if the court holds that the defendant "is immune," the defendant is entitled to a mandatory award of attorneys' fees, costs, and litigation expenses. *Id.* § 8340.18(a).

*Fourth*, for cases in state court, the Act creates a new procedural vehicle – a special motion to dismiss – through which a defendant may invoke the immunity and receive an expedited ruling. The Act provides that when a special motion is

---

[6] These circumstances track Pennsylvania's standards for granting preliminary objections in the nature of a demurrer, *see Yocum v. Commw. Pa. Gaming Control Bd.*, 161 A.3d 228, 234 (Pa. 2017), and summary judgment, *see Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 10 (Pa. 2015), as well as the federal standards for granting motions to dismiss pursuant to Rule 12(b)(6), *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and summary judgment pursuant to Rule 56, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

filed, a court must hold a hearing on it within 60 days of its filing and must issue a written opinion deciding whether the defendant is immune within another 60 days. *Id.* § 8340.16(d)(1), (5). The Act is clear, however, that a defendant need not file a special motion to be entitled to immunity, as the immunity can be asserted through any available form of motion or pleading. *Id.* § 8340.16(c).

*Fifth*, when a defendant files a special motion to dismiss in state court, "all other proceedings" in the litigation – including discovery – are automatically stayed until a determination on immunity has been made. *Id.* § 8340.16(e)(1). The stay continues through the conclusion of any interlocutory appeal of the immunity ruling. *Id.* § 8340.16(e)(2).

Together, these five mechanisms allow courts to swiftly expose and dismiss baseless claims, shielding defendants from the financial, emotional, and other burdens associated with full discovery and trial, processes that routinely take years to complete.[7] To ensure that PA-UPEPA achieves its goal, the legislature directed courts to give the Act's protections a "[b]road construction." *Id.* § 8340.12(4).

---

[7] The first three mechanisms – immunity, interlocutory appeal, and fee-shifting – took effect when the statute was enacted. PA LEGIS 2024-72 § 2, 2024 Pa. Legis. Serv. Act 2024-72 § 7(2) (H.B. 1466). Because the special motion and automatic stay provisions are considered procedural under Pennsylvania law, they will take effect once approved by the Pennsylvania Supreme Court. *Id.* § 7(1); *see* Pa. Const. art. V, § 10(c); *Hernandez v. Zook*, 2026 WL 2717231 (Pa. Sept. 15, 2026); Berry & Gurney, *supra* note 5, at 11-12. Rules to promulgate those two mechanisms were proposed earlier this year. *See* 56 Pa. Bull. 997, 2026 PA REG TEXT 712935 (NS) (Feb. 21, 2026).

## II. <u>PA-UPEPA CONFERS IMMUNITY FROM SUIT.</u>

Two district courts in this Circuit have concluded that PA-UPEPA grants defendants a substantive immunity from suit. First, Chief Judge Wendy Beetlestone of the Eastern District of Pennsylvania held that the immunity provided by PA-UPEPA "is indeed 'a right not to stand trial.'" *Salaam v. Trump*, 2025 WL 2375397, at *1 n.1 (E.D. Pa. Aug. 15, 2025) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988)). As Judge Beetlestone explained, the provisions of the Act "collectively work to insulate immunity-claimants from the burdens of trial until such time as their entitlement to the immunity is conclusively decided." *Id.* Subsequently, Judge Mia Roberts Perez of the Eastern District of Pennsylvania – the same judge presiding over this case below – also concluded that PA-UPEPA "creates a substantive right – immunity from suit." *Lento L. Grp. PC v. Estrada*, 2026 WL 2100471, at *14 (E.D. Pa. July 21, 2026).

As detailed below, Judges Beetlestone and Perez are correct: PA-UPEPA's "text and structure," as well as "the purpose and effect of [its] immunity provision," make clear that it grants defendants an immunity from suit. *Salaam*, 2025 WL 2375397, at *1 n.1.[8]

---

[8] The jurisdictional issue addressed here also has been raised in the pending appeal of an earlier order in *Salaam*. *See Salaam v. Trump*, No. 25-2230 (3d Cir.).

### A. The Statute's Text and Structure Demonstrate the Legislature Sought to Immunize Defendants from the Burdens of Meritless Lawsuits Arising from Speech on Matters of Public Concern.

The statutory features described above demonstrate that the General Assembly intended PA-UPEPA's immunity to function not just as an "immun[ity] from civil liability," 42 Pa.C.S. § 8340.15, but also as an immunity from suit that frees a defendant from "the costs, burdens, and consequences of having to be party to an action and to defend one's self," *Bell Atl.*, 273 F.3d at 345.

Start with the right to immediate interlocutory appeal provided by PA-UPEPA. This Court has explained that whether state law permits interlocutory appeals "sheds light on whether a substantive immunity from suit exists." *Brown*, 922 F.2d at 1107; *see also NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 750 (5th Cir. 2014) ("the absence or presence of interlocutory statutory review mechanisms at the state level informs the question of whether interlocutory appeal is permissible in federal courts"); *cf. In re City of Phila. Litig.*, 49 F.3d 945, 958 (3d Cir. 1995) (the fact that denial of a state-law immunity cannot be immediately appealed in state court "strongly implies that such immunity is only from liability"); *Kevin C. v. Founds. Behav. Health*, 2023 WL 3244575, at *4 (3d Cir. May 4, 2023) (suggesting that if denials of immunity pursuant Pennsylvania's Mental Health Procedures Act could be immediately appealed, it would "imply that [such] immunity was understood to be immunity from suit").

Pennsylvania law ordinarily permits interlocutory appeals only in the appellate court's discretion. *See* 42 Pa.C.S. § 702(b). But, for the "protected public expression immunity" provided by PA-UPEPA, the legislature authorized an interlocutory appeal by right. *Id.* § 8340.18(a). That right is compelling evidence of the legislature's intent to protect defendants who face claims arising from speech on matters of public concern from having "to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The same is true of PA-UPEPA's automatic stay provision. 42 Pa.C.S. § 8340.16(e).[9] That provision – which stays other proceedings in the litigation through any appeal – implements the legislature's judgment that subjecting a potentially immune defendant to "the burdens of such pretrial matters as discovery" would "vitiate[] immunity." *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 187-88 (3d Cir. 2021). PA-UPEPA's automatic stay would serve no purpose if the legislature merely intended to provide an ordinary defense against liability. As the Act's commentary explains, the automatic stay insulates defendants "from the burdens of litigation – which include not only discovery, but responding to motions and other potentially abusive tactics – until the court

[9] The Inquirer has not invoked any of PA-UPEPA's procedural provisions in this case, nor has it claimed they apply in federal court. Nevertheless, these provisions are relevant to understanding the nature of the immunity conferred by the statute.

adjudicates the motion and the moving party's appellate rights with respect to the motion are exhausted." 42 Pa.C.S. § 8340.16 Uniform Law Cmt. 1 to § 4. In fact, the commentary observes, the stay applies to *all* proceedings in the action to "protect[] a moving party from having to battle related claims – some of which might be subject to a motion under the Act and some which are not." *Id.* § 8340.16 Uniform Law Cmt. 3 to § 4.[10]

The Act's mandatory award of "attorney fees, court costs and expenses of litigation" further underscores that PA-UPEPA is designed to provide an immunity from suit. It reflects the General Assembly's desire to relieve defendants of all the financial costs associated with "defend[ing] against meritless claims arising from the exercise of the rights to protected public expression." 42 Pa.C.S. § 8340.12(3)(ii). Significantly, the legislature tied the mandatory award to the determination of immunity, which is decided based on the standards for a motion to dismiss or a motion for summary judgment, demonstrating the legislative intent to relieve defendants of the burden of litigating claims that should not proceed to

[10] The unusual statutory time limit for deciding special motions to dismiss in state court reflects the General Assembly's desire for courts to adjudicate immunity as quickly as possible, so that pending litigation does not hang over the heads of immune defendants any longer than necessary. *See* 42 Pa.C.S. § 8340.16(d). Though the provisions imposing an automatic stay of discovery and requiring an expedited ruling are not yet in effect, *see supra* note 7, they reinforce the legislature's intent to lessen the burdens of defending against lawsuits arising from "protected public expression."

trial, and no further than necessary. *Id.* § 8340.18(a)(1).[11] By providing both an award of fees and a right to interlocutory appeal a trial court's immunity determination, the General Assembly acknowledged that the cost and the time needed to defend against meritless lawsuits are independently likely to chill defendants' future expression. It sought to mitigate each risk in an appropriate way, with the overarching goal of protecting defendants from the burdens of suit. *See Oss Nokalva, Inc. v. Eur. Space Agency*, 617 F.3d 756, 761 (3d Cir. 2010) (explaining that because immunity from suit affords "the right not to be subjected to trial," denial of that right "is 'effectively unreviewable' on direct appeal because even were [the defendant] to prevail after a trial, it still would have been subject to the process" (cleaned up)).

Finally, although one of the Act's provisions includes the phrase "immune from civil liability," 42 Pa.C.S. § 8340.15, the use of that phrase in one section of the statute does not contradict the conclusion that PA-UPEPA as a whole grants an immunity from suit. When interpreting Pennsylvania law, this Court applies Pennsylvania's rules of statutory interpretation. *See In re Trs. of Conneaut Lake*

---

[11] Because PA-UPEPA's immunity is conditioned on a showing the defendant is entitled to avoid liability under the existing demurrer and summary judgment standards, 42 Pa.C.S. § 8340.15, it must serve as an immunity from suit to avoid being rendered surplusage. Were PA-UPEPA's immunity merely a defense to liability, it would be entirely redundant to those well-worn standards. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

*Park, Inc.*, 855 F.3d 519, 523 (3d Cir. 2017). Under Pennsylvania law, the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections." *AtNight Media*, 2026 WL 2860890, at *6 (interpreting PA-UPEPA). Consistent with these principles, Pennsylvania courts have held that immunity under the Commonwealth's Tort Claims Act – which generally provides that "no local agency shall be liable for any damages," 42 Pa.C.S. § 8541 – also immunizes such agencies from suit, because "subjecting a local agency to engage in the legal process in a claim for damages undermine[s] the purpose of its governmental immunity," *N.N. v. Sch. Dist. of Philadelphia*, 349 A.3d 1081, 1087 (Pa. Commw. 2025). Similarly, PA-UPEPA's structure and purpose unequivocally demonstrate that the General Assembly intended the law to immunize defendants from suit.

### B. PA-UPEPA's Purpose and Effect Show It Provides an Immunity from Suit.

The legislature's intent to confer an immunity from suit is evident not only from the statutory structure but also from PA-UPEPA's stated purpose. *See supra* at 9-10. Numerous courts, including this one, have recognized that the burden of litigating lawsuits arising from protected speech can dissuade the exercise of First Amendment rights and "often can cripple" defendants with fewer resources.

*Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 280 & n.76 (3d Cir. 1980).[12] This burden and the accompanying chill on public expression is why the General Assembly enacted PA-UPEPA. It recognized that, although the First Amendment protects defendants, existing constitutional and state-law defenses to liability were not enough to restrain the "disturbing increase in lawsuits brought primarily to chill the valid exercise of protected public expression." 42 Pa.C.S. § 8340.12(1). Thus, the Legislature sought to provide those "exercising the rights to protected public expression" with additional protection by passing a statute that "grants immunity" from suit. *Id.* § 8340.12(3)(i).

PA-UPEPA's legislative history reflects this purpose. As the commentary to the Act explains, the "point of the anti-SLAPP statute is that you have a right not to be dragged through the courts because you exercised your constitutional rights." *Id.* § 8340.14 Uniform Law Cmt. 2 (explaining the Act is "designed to prevent

---

[12] *See also, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 75 (2023) (observing that "concern[] about the expense of becoming entangled in the legal system" leads to "'self-censorship' of speech that could not be proscribed"); *Nat'l Rev., Inc. v. Mann*, 589 U.S. 1088, 1093 (2019) (Alito, J., dissenting from denial of cert.) (recognizing that the prospects of "shoulder[ing] all the burdens of difficult litigation," including being "faced with hefty attorney's fees," "may deter the uninhibited expression of views that would contribute to healthy public debate"); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"); *Schuster v. U.S. News & World Rep., Inc.*, 602 F.2d 850, 855 (8th Cir. 1979) (emphasizing that "the cost of defending a protracted lawsuit can chill first amendment rights").

substantive consequences: the impairment of First Amendment rights and the time and expense of defending against litigation that has no demonstrable merit”).

The statute’s supporters made this clear. For example, when the legislation was being considered on the floor of the State Senate, Sen. Maria Collett explained that PA-UPEPA is intended to address suits that “overwhelm[] nonmoving parties with excessive stress and legal fees simply for statements or positions they may take in connection with matters of public interest.” Remarks on H.B. 1466, Pa. S. Legis. J., 2024 Sess., 647 (July 9, 2024). Sen. Katie Muth made the same point, stating that the legislation seeks to provide a remedy to “lawsuits intended to deter or silence critics by burdening them with the cost of a legal defense.” *Id.*

Indeed, the comments to PA-UPEPA explicitly state that its purpose is to “protect the defendant from the burdens of trial, not merely from ultimate judgments of liability.” 42 Pa.C.S. § 8340.17 Uniform Law Cmt. 1. To achieve that end, the law’s drafters provided the right to an immediate appeal. They recognized that “[i]f the defendant were required to wait until final judgment to appeal the denial of a meritorious anti-SLAPP motion, a decision by [the appellate] court reversing the district court’s denial of the motion would not remedy the fact that the defendant had been compelled to defend against a meritless claim brought to chill rights of free expression.” *Id.* Put simply, “the ultimate purpose of the Act” is “to allow a party to avoid the expense and burden of frivolous litigation

until the court can determine that the claims are not frivolous." 42 Pa.C.S. § 8340.16 Uniform Law Cmt. 5 to § 4; *see Heller*, 454 F.3d at 177 (construing Pennsylvania's common-law defamation privilege for public officials as an immunity from suit because it is "designed to protect the official from the suit itself").[13]

Other circuits have cited similar statutory purposes when permitting immediate appeals of orders denying motions under other states' anti-SLAPP laws. For instance, in holding that the denial of a motion to dismiss under Maine's anti-SLAPP law is immediately appealable, the First Circuit explained that because "[t]he stated purpose of Maine's anti-SLAPP statute is to shield defendants from the burden of meritless litigation," a defendant is "denied meaningful relief if it must go through the time and expense of fully litigating this matter before it can address the anti-SLAPP issue." *Franchini v. Inv.'s Bus. Daily, Inc.*, 981 F.3d 1, 7 (1st Cir. 2020). Likewise, after Oregon amended its anti-SLAPP statute to provide a right to immediate appeal and to state explicitly that the law's "purpose . . . is to provide a defendant with the right to not proceed to trial," the Ninth Circuit held that the denial of a motion invoking that immunity is immediately appealable in federal court. *Schwern v. Plunkett*, 845 F.3d 1241, 1244-45 (9th Cir. 2017) (citing

[13] *Cf. Brown*, 922 F.2d at 1108 (declining to treat qualified immunity under New Jersey Tort Claims Act as immunity from suit where no "legislative history directly addresses the immunity from suit concerns").

and quoting amended provisions of Oregon law). These decisions underscore that the express aim of protecting defendants from the burdens of baseless litigation articulated in anti-SLAPP statutes favors construing PA-UPEPA as granting an immunity from suit.[14]

* * *

In sum, PA-UPEPA's text, structure, purpose, and effect leave no doubt that the law immunizes defendants like the Inquirer not just from liability but from suit.

## III. BECAUSE PA-UPEPA CONFERS AN IMMUNITY FROM SUIT, ITS DENIAL IS IMMEDIATELY APPEALABLE.

A party has a "right to an interlocutory appeal from the denial of a claim of absolute or qualified immunity under state law . . . where the state has extended an underlying substantive right to be free from the burdens of litigation." *Brown*, 922 F.2d at 1106-07. Because PA-UPEPA provides an immunity from suit, an order denying that immunity satisfies the three elements of the collateral order doctrine. *See Geo Grp.*, 607 U.S. at 444.

[14] To be sure, some courts of appeals have reached different conclusions as to the appealability of orders under anti-SLAPP laws in different states. *See, e.g.*, *Gopher Media LLC v. Melone*, 154 F.4th 696 (9th Cir. 2025) (en banc) (addressing California's anti-SLAPP law). But the statutory text, structure, and history of anti-SLAPP laws vary widely by state, and not all such laws provide an immunity from suit. *See, e.g.*, *id.* at 704 (finding significant that California courts have "discussed anti-SLAPP protection in a way that casts doubt on our analogy between anti-SLAPP protection and immunity defenses"). Here, PA-UPEPA's statutory scheme and purpose establish that the General Assembly intended it to immunize eligible defendants from the burdens of suit.

*First*, like other immunities, orders denying PA-UPEPA's immunity are "effectively unreviewable on appeal from a final judgment." *E.g.*, *Mitchell*, 472 U.S. at 526-27 (qualified immunity against 42 U.S.C. § 1983 suits); *P.R. Aqueduct*, 506 U.S. at 144 (Eleventh Amendment immunity); *Est. of Arrington v. Michael*, 738 F.3d 599, 604 (3d Cir. 2013) (Child Safety Lock Act); *Oss Nokalva*, 617 F.3d at 760-61 (International Organizations Immunities Act); *Odd v. Malone*, 538 F.3d 202, 207 (3d Cir. 2008) (prosecutorial immunity); *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281 (3d Cir. 1993) (Foreign Sovereign Immunities Act). Such denials are unreviewable in two respects: (1) once a claim proceeds beyond a motion to dismiss and motion for summary judgment, a defendant is not entitled to recover its fees, costs, and expenses under PA-UPEPA, *see supra* at 16-17; 42 Pa.C.S. §§ 8340.15, 8340.18(a) (tying award of fees to immunity, which is based on standards for pretrial motions); and (2) "an erroneous denial exposes the defendant to the burden of litigation, thwarting the purpose of the immunity," *In re Mushroom Direct Purchaser Antitrust Litig.*, 655 F.3d 158, 164 (3d Cir. 2011). Here, there is an especially strong public interest in promptly correcting an erroneous denial of immunity in light of the General Assembly's finding that the burdens of retaliatory litigation are chilling the exercise of constitutional rights. *See* 42 Pa.C.S. § 8340.12(1); *Will v. Hallock*, 546 U.S. 345, 353 (2006) (explaining

that "it is . . . avoidance of a trial that would imperil a substantial public interest, that counts when asking whether an order is 'effectively' unreviewable").

*Second*, orders denying PA-UPEPA's immunity "conclusively determine the disputed question[s]" of whether the defendant is entitled to recover fees and avoid the burdens of suit. *Mitchell*, 472 U.S. at 527; *see also Geo Grp.*, 607 U.S. at 447 n.3 ("[A] pretrial denial of an immunity always acts as a fully consummated decision because nothing can then happen to avert the trial the defendant maintains is barred." (cleaned up)).

*Third*, because PA-UPEPA grants "an entitlement not to be forced to litigate," its "immunity is conceptually distinct from the merits of the plaintiff's claim." *Mitchell*, 472 U.S. at 527. As with other immunities, "[a]ll [this Court] need determine is a question of law," *id.* at 528 – specifically, whether the speech at issue is "protected public expression," and, if so, whether the plaintiff failed to state a claim or establish a prima facie case, or whether the defendant is entitled to judgment as a matter of law, 42 Pa.C.S. § 8340.15.

That these purely legal determinations "will entail consideration of the factual allegations that make up the plaintiff's claim for relief" does not impermissibly entangle the inquiry in the merits. *Mitchell*, 472 U.S. at 528. As the Supreme Court has explained, "a question of immunity is separate from the merits of the underlying action for purposes of the *Cohen* test even though a reviewing

court must consider the plaintiff's factual allegations in resolving the immunity issue." *Id.* at 528-29. Indeed, courts must closely scrutinize a complaint to determine whether a defendant is entitled to qualified immunity, double jeopardy protection, or Speech and Debate Clause immunity, all of which fall within the collateral order doctrine. *Id.* at 528-29 & n.10.

Qualified immunity offers an apt comparison. That immunity recognizes that the "public interest may be better served" when government actors can act "with independence and without fear of consequences." *Id.* at 525 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). It ensures "that 'insubstantial claims' against government officials" do not proceed to trial, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and allows courts "to weed out suits . . . without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits," *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

Qualified immunity requires courts to first consider two purely legal issues: "whether a constitutional right would have been violated on the facts alleged" and "whether the right at issue was clearly established at the relevant time." *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014); *Mitchell*, 472 U.S. at 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant is entitled to dismissal before the commencement of discovery."). Those

questions "raise legal issues . . . quite different from any purely factual issues that the trial court might confront if the case were tried." *Plumhoff*, 572 U.S. at 773. When either question is decided in favor of a government official, the official has "immunity from suit" – a "right not to *stand trial* on the plaintiff's allegations." *Mitchell*, 472 U.S. at 527. Although the result in many qualified immunity appeals "depends very much on the facts of each case," the denial of immunity remains "completely separate from the merits of the action." *Plumhoff*, 572 U.S. at 772, 779. Thus, it has long been held that the denial of qualified immunity involving those pure questions of law "easily meets" the collateral order requirements. *Mitchell*, 472 U.S. at 527.

The same is true for PA-UPEPA. It was enacted because the General Assembly believed the public interest would be best served by ensuring that Pennsylvanians' speech on matters of public concern not be chilled by concerns about facing the consequences of meritless lawsuits. *See supra* at 9-10, 18-22. The legislature sought to achieve that objective by granting immunity to "parties exercising the rights to protected public expression." 42 Pa.C.S. § 8340.12(3)(i). As with qualified immunity, the denial of PA-UPEPA's immunity is conclusive at the pleading stage, when it subjects the defendant to the burdens of pretrial discovery and further motion practice, *see Behrens v. Pelletier*, 516 U.S. 299, 308 (1996), and at summary judgment, when it "finally and conclusively determines

the defendant's claim of right not to stand trial on the plaintiff's allegations," *Mitchell*, 472 U.S. at 527. And, just like in cases involving qualified immunity, the appealability of a denial of the immunity provided by PA-UPEPA is limited to pure legal issues, including whether a claim arising from "protected public expression" can be asserted "on the facts alleged." *Plumhoff*, 572 U.S. at 774; *see* 42 Pa.C.S. § 8340.15; *see also Mitchell*, 472 U.S. at 529 n.9 (emphasizing "the appealable issue is a purely legal one"); *Blaylock v. City of Philadelphia*, 504 F.3d 405, 409 (3d Cir. 2007) (appellate jurisdiction for qualified immunity "depends on whether the defendants' appeal raises pure questions of law").

In sum, the district court's order denying the Inquirer's motion to dismiss is immediately appealable under the collateral order doctrine because (1) it would effectively be unreviewable if not reviewed now; (2) it conclusively denied the Inquirer immunity from suit, forcing the Inquirer to engage in discovery and further litigation; and (3) determining whether the Inquirer is immune from suit or whether it must continue to endure the burdens of litigation presents a purely legal issue separate from the merits.

## IV. ALLOWING IMMEDIATE APPEALS OF PA-UPEPA'S IMMUNITY UPHOLDS FEDERALISM INTERESTS.

Finally, consistent with longstanding principles of federalism, permitting defendants to immediately appeal the denial of PA-UPEPA's immunity will accord

proper respect to the General Assembly's determination that abusive lawsuits threaten Pennsylvanians' expressive freedoms.

As the Supreme Court has explained, "when state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity." *Ferri v. Ackerman*, 444 U.S. 193, 198 (1979). Thus, where a "cause of action is created by local law, the measure of it is to be found only in local law. It carries the same burden and is subject to the same defenses in the federal court as in the state court." *Ragan v. Merchs. Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949); *see, e.g.*, *City of Phila. Litig.*, 49 F.3d at 957 (recognizing that "it is state law that provides the substantive doctrine of immunity").

Here, the Pennsylvania legislature made the considered decision to impose a substantive limitation – immunity from suit – on certain state-law causes of action. It did so to alleviate burdens not only on the exercise of First Amendment freedoms but also on expressive activity protected by the Pennsylvania Constitution. *See* 42 Pa.C.S. § 8340.13(3). To effectuate this immunity from suit, the legislature provided that orders denying immunity may be immediately appealed as of right. *Id.* § 8340.17.

The General Assembly's policy judgments will not be fully realized unless an order denying immunity also can be immediately appealed in federal court. To

deny the availability of such an appeal would strip PA-UPEPA's immunity of its core protection in federal court. Further, if the denial of the Act's immunity is not appealable in federal court, plaintiffs will be incentivized to bring retaliatory claims in federal rather than state courts. Such claims are more likely to chill speech when defendants know that, if they lose a motion to dismiss, they will have no guaranteed recourse against invasive discovery and expensive motion practice. Inevitably, then, the inconsistent availability of the Act's immunity from suit will promote both forum-shopping and self-censorship. The Court should reject a result so inconsistent with basic principles of federalism. *See Hanna v. Plumer*, 380 U.S. 460, 474 (1965) (Harlan, J., concurring) (explaining that a "modern cornerstone[] of our federalism" is the principle that "there should not be two conflicting systems of law controlling the primary activity of citizens, for such alternative governing authority must necessarily give rise to a debilitating uncertainty in the planning of everyday affairs").

## CONCLUSION

For the reasons set forth above, the Inquirer respectfully submits that the district court's order entered on June 17, 2026 is appealable at this time.

Dated: October 7, 2026

Respectfully submitted,

BALLARD SPAHR LLP

By: *\/s\/ Michael Berry*

Michael Berry
berrym@ballardspahr.com
Elizabeth Seidlin-Bernstein
seidline@ballardspahr.com
Timothy Tai
tait@ballardspahr.com
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Counsel for Appellants The Philadelphia Inquirer LLC, Samantha Melamed, Max Marin, Michelle Myers, Anton Klusener, and Dylan Purcell*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Appellate Rule 31.1, I hereby certify that:

1. Pursuant to FED. R. APP. P. 32(c)(2)(B), the foregoing Brief does not have a type-volume limitation. According to the word count of the word-processing system used to prepare the Brief, the Brief contains 7,067 words, excluding the signature blocks and certificates of counsel;

2. The foregoing Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, 14-point Times New Roman font;

3. The text of the electronic Brief and the text of any paper copies to be filed with the Clerk are identical; and

4. The PDF file of this Brief has undergone a virus check using Windows Defender Advanced Threat Protection Antivirus, Version 1.459.574.0 (last updated October 5, 2026), and no virus was detected.

This 7th day of October, 2026.

*/s/ Michael Berry*
Michael Berry

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October 2026, I caused a true and correct copy of this Brief to be served via first-class mail and email upon Plaintiffs' counsel as follows:

Daniel A. Pallen, Esq.
114 W. Front Street
Media, PA 19063
dpallen@pallenlaw.com

*Counsel for Plaintiffs Adam Ehrlich, Good Bet Trading LLC, and A Kensington Joint LLC*

*/s/ Michael Berry*
Michael Berry